[No. A037754. First Dist., Div. Three. Sept. 29, 1988.]

COMMUNITY DEVELOPMENT COMMISSION OF MENDOCINO COUNTY, Plaintiff and Appellant, v.
CITY OF FORT BRAGG, Defendant and Respondent.

COUNSEL

William Bernstein and Mulholland, Bernstein & Peterson for Plaintiff and Appellant..

John L. Cook for Defendant and Respondent.

OPINION

MERRILL, J.—Community Development Commission of Mendocino County (CDC) appeals from a judgment denying issuance of a peremptory writ of mandate directing the City of Fort Bragg (Fort Bragg) to reinstate a conditional use permit which it found to have expired or to set aside its finding that the permit had expired. The judgment also denied declaratory relief to the effect that a City of Fort Bragg Municipal Ordinance is unconstitutional.

At issue in this appeal is the interpretation of Fort Bragg's Municipal Code section 18.76.100 which provides for the expiration of conditional use permits in one year of the date of issuance "unless substantial evidence of use is in progress." We hold the trial court erroneously interpreted this statute as requiring actual on-site construction. Accordingly, we reverse the judgment.

I

On October 26, 1982, CDC, a public housing agency, and Fort Bragg entered into an agreement requiring both parties to cooperate in the development of affordable housing; CDC agreed to obtain federal funding for the project and Fort Bragg agreed to facilitate construction by granting variances where reasonable and necessary. Thereafter, CDC transferred a preexisting Department of Housing and Urban Development (HUD) 30-unit housing commitment from unincorporated Mendocino County to Fort Bragg. HUD approved of the development of 30 units of affordable housing on 2 sites located by CDC; 19 units at 531 Cypress and 11 units at 558 South Sanderson Way. In this appeal we are concerned only with the South Sanderson Way development.

CDC applied for a use permit as to the Sanderson site only. It did not apply for a use permit as to the Cypress site as it had been informed by the

Fort Bragg planning director that a 1980 use permit for the construction of 19 units of low-cost housing was still valid.

Following notice and a public hearing, on April 26, 1983, the zoning administrator for Fort Bragg approved CDC's proposed 11-unit project at the Sanderson site, subject to numerous conditions such as water pressure, sewage, and drainage. CDC thereafter purchased the Sanderson property at a cost of $95,000, obtained HUD approvals for engineering and architectural studies, expended $85,000 on architects, civil engineers, soils engineers, a survey and a topographical map.

On July 3, 1984, Fort Bragg's building inspector, James Fite, informed CDC by letter of the amount of fees required for CDC's building permits on both the Cypress and Sanderson sites. In this letter, Fite also advised CDC that a planning department official discovered that the "use permit for Sanderson Way had expired as of April 26, 1984."

Although CDC did not request an extension of USP 9-83, the zoning administrator, following public hearing, granted a one-year extension of the permit on July 24, 1984. When a neighbor appealed this determination, the Fort Bragg City Council conducted its own extension hearing on August 27, 1984, and reversed the previously granted extension. CDC's position throughout these proceedings was that an extension was unnecessary as the original USP 9-83 had not expired. At the hearing CDC requested a determination of the validity of the original permit notwithstanding the city council's decision concerning the appeal.

Thereafter, on October 22, 1984, the city council conducted a hearing to determine the validity of USP 9-83. Citing CDC's expenditure of funds, hiring of numerous engineers and architects, removal of fixtures in preparation for construction, continued processing of the project with HUD and submittal of plans to the building department to obtain a permit, the city attorney presented his recommendation that the city council find the permit had not expired based on evidence of CDC's substantial use of the permit. Further, the city attorney informed the city council that because of the particular requirements of the HUD approval process, CDC could not expend funds for the building permit fees until the construction contract was awarded to a contractor. Upon the payment of these fees and a valid use permit, the building inspector would issue the necessary building permits. At the hearing, future neighbors of the Sanderson project expressed their objections to it on the basis that they had not received notice of the initial April 1983 hearing at which USP 9-83 was granted and that it would introduce a blight to the community. The city council found that USP 9-83

was no longer valid as CDC had not demonstrated substantial evidence of use of the permit before the expiration date. In addition, the city council found that the conditions upon which USP 9-83 was approved did not sufficiently mitigate the project's environmental impact on traffic, drainage and water in the area. Finally, the city council found residents did not receive adequate notice of the April 26, 1983, zoning administrator's hearing.

At a December 17, 1984, public hearing to reconsider its decisions of August 27, 1984, and October 22, 1984, the city council reaffirmed its decisions.

On November 20, 1984, CDC and Rhonda Hornbeck,[1] a Fort Bragg resident eligible for occupancy in low-cost housing financed by HUD, filed a petition for writ of mandate seeking administrative mandamus (Code Civ. Proc.,[2] § 1094.5) and traditional mandamus (§ 1085) relief concerning the city council's determination that CDC should not be granted an extension of USP 9-83 and that the initial permit is invalid.[3] On April 25, 1985, CDC and Hornbeck amended their petition to include causes of action for injunctive relief, estoppel, declaratory relief as to the validity and enforceability of Municipal Code section 18.76.100 on its face and as applied, and for mandamus relief concerning the issuance of the building permit. Trial as to the administrative mandamus petition was held on January 4, 1985; trial on the remaining issues was held on July 15, 1986.

The judgment denied CDC mandamus and injunctive relief and in the declaratory relief action determined that Municipal Code section 18.76.100 is valid and constitutional. In its statement of decision the trial court found that Fort Bragg had not abused its discretion in finding USP 9-83 was invalid or by reversing the zoning administrator's extension of the permit. In connection with the permit's validity, the trial court found that USP 9-83 expired on April 26, 1984, because "no substantial work" had been done on the property. The court set forth that under the terms of Municipal Code section 18.76.100, "substantial evidence of use in progress" had not been demonstrated by CDC, noting that residential use had not commenced on the property, and on-site construction expenses had not been incurred. The court stated "[t]he only activities undertaken by CDC with respect to this site related to steps preparatory to its application for a building permit."

---

[1] In its statement of decision, the trial court dismissed the case as to Rhonda Hornbeck.

[2] All further statutory reference is to the Code of Civil Procedure unless otherwise noted.

[3] In addition to Fort Bragg, the petition also named Leo G. Meskis, Andre Schade and Matthew V. Huber, members of the city council, as respondents. By pretrial order, the petition against these individuals was dismissed.

The court also found it significant that CDC had not yet made formal application for a building permit.

The court determined that Municipal Code section 18.76.100 was not vague. It found the ordinance to be valid and reasonably certain and capable of interpretation "in accordance with legislative intent and with a common understanding of the language used." The court interpreted the purpose of the ordinance to be the automatic expiration of the permit when the permittee has "neither actually used the land for the purpose stated in the permit nor substantially begun construction work necessary for the use . . . . '[E]vidence of use' requires that the permittee actually use or occupy the land to a substantial degree for the purpose stated in the permit."

The court also found that the city council properly denied an extension of USP 9-83. In response to the estoppel claim, the court found that CDC had not performed substantial work in reliance on the permit or upon representations of city officials.

II

*Validity of USP 9-83*

■ CDC argues that the trial court erroneously construed Municipal Code section 18.76.100 as intending "to cause the automatic expiration of use permits where the permittee has neither actually used the land for the purpose stated in the permit nor substantially begun construction work necessary for the use." Thus, CDC contends, the trial court incorrectly found that CDC's failure to actually construct buildings on the Sanderson Way site constituted a lack of "substantial evidence of use in progress." We agree and hold the trial court's determination, that the permit had expired for lack of substantial evidence of use in progress, was arbitrary and contrary to authority.

It is settled that the purpose of statutes or ordinances providing for automatic expiration or revocation of use permits when work has not commenced or a use established is to prevent the reservation of land for future purposes when the permittee has no good faith intent to presently commence upon the proposed use. (*Upton* v. *Gray* (1969) 269 Cal.App.2d 352, 357 [74 Cal.Rptr. 783]; *Morgan* v. *County of San Diego* (1971) 19 Cal.App.3d 636, 641 [97 Cal.Rptr. 180].) In *Morgan,* the court examined the building department official's exercise of discretion in determining whether the permit should be renewed. The permit provided for its own automatic expiration in six months, if not renewed. The official charged

with determining the propriety of renewal made an on-site inspection of the property, found that the lack of extensive construction demonstrated the permittee's dilatoriness and refused to renew the permit. The Court of Appeal held that the official abused his discretion by applying such a standard. As the court observed, "the extent of construction alone does not invariably show whether a permittee is ready to proceed . . . . [M]uch work must be done on the drawing board, in governmental and banking offices before the pick and shovel may be wielded and mortar poured." (*Morgan* v. *County of San Diego, supra,* 19 Cal.App.3d at p. 641.) The court reasoned that a standard concerned only with the extent of construction, especially when a complex and expensive project is involved, is unreasonable and "bears no necessary or direct relationship to whether a good faith intent to commence upon the use exists." (*Ibid.*) The *Morgan* court affirmed the trial court's issuance of a writ of mandamus requiring the local agency to renew the permit. (*Id.,* at pp. 638-642.)

As in *Morgan,* CDC's development project herein involved complex governmental and financial commitments. HUD, as the financier of this low-cost housing development, required review and approval of each step of the project, from site location, to architectural and engineering studies, to the bidding of the actual construction contract. During the term of the use permit, CDC purchased the land, hired architects and engineers for requisite studies and continued to actively pursue the project with HUD. Further, the city council had been informed that the only reason a building permit had not been issued, other than the determination of an invalid use permit, was CDC's failure to pay the building permit fees. The city council was also informed that the reason for this nonpayment was that HUD's review process demanded such fees be paid by the contractor to whom the bid was awarded. A successful bidder on the construction contract had not been determined at the time CDC submitted its plans to the Fort Bragg building inspector for review. In fact, opening of the bid procedure had been delayed in July and August 1984 because of the city's building permit review process and because of an appeal of the use permit extension.

The record in this case clearly demonstrates CDC was proceeding with a good faith intent to commence upon the proposed use. It is undisputed that CDC pursued and obtained a funding commitment from HUD; that it purchased the Sanderson property at a cost of $95,000; hired architects and engineers for the performance of preconstruction work at a cost of $85,000; had soil borings performed; arranged for the removal of two small structures; and submitted plans to Fort Bragg's building inspection for "plan check review." The trial court's determination that substantial evidence of use was not shown because of the absence of actual on-site construction

bears no definitive relationship to the purpose of the Fort Bragg ordinance. In a complex, government-financed development, a good faith intent to proceed may be established in several ways, exclusive of actual on-site construction. In light of the evidence of the complex HUD approval process, the amount of funds already expended by CDC in preconstruction work, test borings, surveying, and CDC's diligent pursuit of HUD and local approval at each stage of development, it was unreasonable for the trial court to apply a standard concerned with the extent of construction alone.[4]

## III

■ We must next consider whether the trial court's erroneous interpretation of the expiration provision prejudiced CDC and requires reversal of the judgment. Thus, we must examine the propriety of the trial court's findings that, notwithstanding the permit's expiration, it had been improperly issued in the first instance.

The city council, in determining that USP 9-83 was invalid, relied on three specific factual findings; that, CDC did not demonstrate substantial evidence of use of the permit; that mitigation measures contained in the negative declaration and conditions of approval for the project were insufficient to mitigate environmental impacts on traffic, drainage and water, and that written notice of the April 26, 1983, zoning administrator's hearing was not received by property owners in the area. The trial court found the city council's decision and findings did not constitute an abuse of discretion and were supported by the weight of the evidence.

The trial court's determination does not withstand analysis. By the terms of Municipal Code section 18.76.100 itself, expiration would only occur if there was no substantial evidence of use in progress. Thus, citation to the project's environmental impact is superfluous to a determination of expiration. Also, the city council seems to have been under the misconception that it was to determine whether notice was actually received by all the adjacent property owners as opposed to determining if proper notice was given.

■ Additionally, even if we were to construe the trial court's determination of the permit's invalidity, based on these reasons, as constituting an attempted revocation of the permit, the judgment would not be saved. A

---

[4] As we have decided the instant appeal on the basis of the validity of the original use permit, we need not consider CDC's constitutional arguments that Municipal Code section 18.76.100 is unconstitutionally vague; that the expiration provision deprives a permittee of procedural due process; and that the city council's decision of invalidity constituted a violation of equal protection.

municipality's power to revoke a permit is limited. A conditional use permit may not be revoked arbitrarily without cause. Furthermore, notice and hearing must be afforded a permittee prior to revocation of a use permit. (See *City of San Marino* v. *Roman Catholic Archbishop* (1960) 180 Cal.App.2d 657, 665 [4 Cal.Rptr. 547], cert. den. 364 U.S. 909 [5 L.Ed.2d 224, 81 S.Ct. 272]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 795-797 [194 P.2d 148].) Municipal Code section 18.76.110 codifies these procedural due process requirements pertaining to revocation. The record is clear that CDC was not afforded notice of the city council's intention to consider revocation of USP 9-83 at the October 22, 1984, hearing. The hearing solely concerned the expiration of the permit in light of whether substantial evidence of use had been demonstrated by CDC. Any attempted revocation is therefore a nullity.

The judgment is reversed and the cause remanded. The trial court is directed to order reinstatement of use permit USP 9-83 and issue a writ of mandate commanding respondent Fort Bragg to issue a building permit. Appellants are awarded costs on appeal.

White, P. J., and Barry-Deal, J., concurred.