Filed 8/22/25  Thompson v. City of Walnut Creek CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LEANNE THOMPSON,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY OF WALNUT CREEK,<br><br>　　　Defendant and Respondent. | A168185, A168978<br><br>(Contra Costa County<br>Super. Ct. No. MSN16-0201) |

Leanne Thompson commenced this action against the city of Walnut Creek, alleging causes of action that included writ of mandate, takings, and due process violations related to a building permit for her house remodel.

The trial court denied all but one of Thompson's writ claims after hearing.  It found in favor of the city on the takings cause of action after a bench trial.  The court then dismissed the due process cause of action because the issues had been litigated and decided against Thompson.  It also declined to grant the writ relief requested by Thompson as moot and improper.  We affirm.

### BACKGROUND

#### A.

Thompson submitted a building permit application for a $140,000 house remodel.  The city issued the permit.  According to Thompson, her project encountered "several unanticipated

problems" that required her contractor to perform more work. According to the city, the project was misrepresented on the permit application and, in fact, had a $297,212 construction value. Given the $341,000 assessed value of the house, the project constituted a substantial improvement subject to additional construction requirements. (Walnut Creek Mun. Code, § 9-12.1.302, subd. (ao) [defining "[s]ubstantial [i]mprovement" to include improvements with a cumulative cost that equals or exceeds 50 percent of the market value of the structure (italics omitted.)].)[1]

One such requirement was that frontage improvements be installed "in accordance with the street setback line." (§ 9-9.205, subd. (a)(2)(ii).) Another requirement was that, for houses like Thompson's within a flood hazard area, the lowest floor elevation be two feet above base flood elevation. (§ 9-12.1.101 et seq. (floodplain ordinance); see also §§ 9-12.1.302, 9-12.1.405.)

Thompson appealed to the city council, requesting a variance from application of those requirements. The council denied the appeal.

**B.**

Thompson filed this action against the city as well as two individual defendants, both of whom were subsequently dismissed. The operative pleading asserted causes of action for writ of mandate, takings, and violations of due process.

The trial court granted the city's motion to bifurcate and heard the petition for writ of mandate first. The court largely denied the petition but found the city could not require Thompson to comply with the setback requirement.

---

[1] Undesignated section references are to the Walnut Creek Municipal Code.

The matter proceeded on Thompson's remaining claims. At a pretrial conference, the court ordered that Thompson's takings cause of action be tried before her due process cause of action and damages claims. At the conclusion of the bench trial, Thompson argued she had proven her takings claim through two alternative legal theories: (1) that the city's actions constituted a per se taking, or (2) that Thompson had a "vested right" in her building permit. The court determined Thompson had failed to establish a taking under either theory and the city was entitled to judgment in its favor on the takings cause of action.

The parties submitted briefing and argument on whether Thompson was entitled to a jury trial on any remaining claims, in light of the trial court's previous rulings. The court dismissed the due process cause of action because those rulings had "adjudicated all issues."

The parties then submitted briefing and argument on whether Thompson was entitled to any remedy arising out of the trial court's order on her petition for writ of mandate. The court found the relief she requested was moot because the city's setback requirement no longer applied to single-family homes like hers, and it was improper given the court's factual findings from the bench trial.

## DISCUSSION

### A.

Thompson challenges the trial court's ruling that she failed to establish her takings cause of action.

"Both the United States Constitution and the California Constitution provide that when a public entity takes private property for a public use just compensation must be paid to the property owner." (*Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 185; U.S. Const., 5th Amend. [private property shall not "be taken for public use, without just compensation"];

Cal. Const., art. I, § 19, subd. (a) [private property "may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner"].)

The determination of whether government action constitutes a taking involves three steps: "(1) the determination of the historical facts--what happened; (2) selection of the applicable legal principles; and (3) application of those legal principles to the facts." (*Ali v. City of Los Angeles* (1999) 77 Cal.App.4th 246, 250 (*Ali*).) The first step involves factual questions exclusively for the trial court to determine and subject to substantial evidence review. (*Ibid*.) The second and third steps involve questions of law for our de novo review. (*Ibid*.)

For an appeal challenging the sufficiency of evidence by a plaintiff who succeeded at trial, we "must view the evidence in the light most favorable to the judgment and the findings, express or implied, of the trial court." (*Ali*, *supra*, 77 Cal.App.4th at p. 250.) But for an appeal like this one, challenging the trier of fact's conclusion that Thompson failed to carry her burden of proof at trial, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*), quoting *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)

With this framework in mind, we turn to the merits of Thompson's arguments that she proved (1) per se takings by the city, and (2) application of the vested rights doctrine.

## 1.

" 'In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests,' the United States Supreme Court has identified only certain narrowly-defined categories of 'government interference with property' that are considered per se (or 'categorical') takings." (*Surfrider Foundation v. Martins Beach 1, LLC* (2017) 14 Cal.App.5th 238, 264 (*Surfrider*), quoting *Arkansas Game & Fish Commission v. United States* (2012) 568 U.S. 23, 31.) "These include 'regulations that completely deprive an owner of "all economically beneficial us[e]" of her property,' as well as governmental action that 'requires an owner to suffer a permanent physical invasion of her property—however minor.' " (*Surfrider*, at p. 264, quoting *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 538.)

Here, the trial court determined Thompson made no showing that the city's conduct "deprived her of all economically beneficial or productive use of the land." On the contrary, the city had shown that other property owners on her street had redeveloped their properties in accordance with the floodplain ordinance. And after the city determined that the floodplain ordinance applied to Thompson's project, she was able to get another set of plans approved under a new permit. The court concluded: "There is no reason to believe that her property has lost all value, and there [are] no per se takings." Thompson does not meaningfully dispute these holdings on appeal.

Thompson argues that she proved per se takings based on the city's allegedly arbitrary orders to stop work on her project and "revocation" of her original building permit.[2] But we are not

---

[2] The trial court had also ruled that, to the extent Thompson's claim was based on the city's substantial improvement determination, it was barred for failure to obtain timely administrative mandate review. The city now argues that

5

persuaded that Thompson established such alleged conduct via uncontradicted evidence (*Sonic*, *supra*, 196 Cal.App.4th at p. 466), let alone that any conduct by the city deprived her property of all value.

First, Thompson did not establish that the city arbitrarily ordered her to stop work on her project twice (September 26 and October 13, 2014) or arbitrarily revoked the permit. She does not seriously grapple with the trial court's factual findings—amply supported by evidence—that contradict her version of events. The trial court found that, instead of arbitrarily ordering Thompson to stop work, a city inspector merely advised, or asked, Thompson's contractor to submit new plans after discovering that the scope of work vastly exceeded the permit, which the trial court found was "appropriate[]." This is consistent with the inspector's testimony and with an email, sent on the day of the inspection, in which the inspector reported, "I did not stop the work." And instead of the city revoking the permit, Thompson herself *cancelled* the permit, on October 13, in a signed document. Later, a building inspector told Thompson's contractor to stop work because, having canceled the permit, they "no longer had a valid permit." We reject Thompson's suggestion that the trial court found that the inspector verbally revoked the building permit. The court itself expressly rejected this argument and reiterated that Thompson canceled the permit.

Second, Thompson offers no cogent legal analysis to show that these facts—or even her alternative facts—establish a per se taking. Her cases are not on point. (*Lockaway Storage v. County*

---

her claim based on work stoppages and revocation is barred for the same reason, but does so in a footnote without any further explanation or authority. The argument is not properly presented and we need not address it. (Cal. Rules of Court, rule 8.204(a)(1)(B) (Rule 8.204(a)(1)(B); *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 (*Hodjat*).)

*of Alameda* (2013) 216 Cal.App.4th 161, 187–188 [taking under *Penn Central Transportation Co. v. City of New York* (1978) 438 U.S. 104 factors];[3] *Congregation Etz Chaim v. City of Los Angeles* (9th Cir. 2004) 371 F.3d 1122, 1124–1125 [equitable estoppel]; *City of San Marino v. Roman Catholic Archbishop* (1960) 180 Cal.App.2d 657, 679 [injunction]; *Trans-Oceanic Oil Corp. v. Santa Barbara* (1948) 85 Cal.App.2d 776, 797-798 [writ of mandate]; *Community Development Com. v. City of Fort Bragg* (1988) 204 Cal.App.3d 1124, 1132 [writ of mandate].)

**2.**

Thompson argues that the trial court erred in concluding she had not established a vested right to support her takings cause of action.

"The doctrine of vested rights as developed in land use law states that a property owner who, in good faith reliance on a government permit, has performed substantial work and incurred substantial liabilities has a vested right to complete construction under the permit and to use the premises as the permit allows." (*Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 323.)

Here, the trial court concluded that Thompson failed to establish a vested right based on four independent grounds. One such ground was that Thompson did not have a vested right to build in contravention of the floodplain ordinance. The trial court

---

[3] *Penn Central Transportation Co. v. City of New York, supra,* 438 U.S. 104 prescribed an " 'ad hoc, multifactored test' " to determine when a use restriction goes " ' "too far" ' " and constitutes a taking. (*Surfrider, supra,* 14 Cal.App.5th at pp. 259, 265.) Here, the trial court concluded that all the *Penn Central* factors weighed against Thompson. Thompson has forfeited any challenge to this ruling. (Rule 8.204(a)(1)(B); *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn. 3 (*OCM Principal*).)

found that Thompson lost an administrative appeal on the application of the floodplain ordinance, then failed to timely pursue an administrative writ, so she cannot now collaterally attack that decision. On appeal, Thompson has forfeited the issue by failing to address it in her opening brief. (Rule 8.204(a)(1)(B); *OCM Principal, supra,* 157 Cal.App.4th at p. 844, fn. 3.)

Even if not forfeited, however, Thompson had no vested right to build in violation of the floodplain ordinance. The vested rights doctrine protects a party against *changes* in the law; it does not create a vested right to violate laws in effect when the permit was issued. (*Attard v. Board of Supervisors of Contra Costa County* (2017) 14 Cal.App.5th 1066, 1077, citing *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1097 and *Davidson v. County of San Diego* (1996) 49 Cal.App.4th 639, 646.)

The floodplain ordinance was in effect when Thompson applied for her building permit. (Former § 9-12.01 et seq., eff. Jan. 2011.) But, as the trial court found, Thompson and her contractor misrepresented the facts in an effort to evade the ordinance. The ordinance is triggered if the value of a project would exceed 50 percent of the home's assessed value. (§ 9-12.1.302, subd. (ao).) Thompson's home was assessed at $341,000. At trial, a document was admitted into evidence showing that Thompson and her contractor executed a contract for a $478,330 remodel, more than triple the figure stated to the city in her permit application ($140,000). The building inspector testified that he visited the site and observed work that went well beyond the approved plans. The city calculated its own construction valuation at $297,212. Based on this calculation and Thompson's $341,000 assessed value, the city determined that the project was a substantial improvement that triggered the floodplain ordinance. Moreover, the trial court found the testimony from Thompson and her contractor not credible.

8

Given this evidence, Thompson cannot establish that the flood ordinance did not apply as a matter of law. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.) We need not address the parties' arguments regarding the other independent grounds identified by the court in rejecting application of the vested rights doctrine.

In sum, we conclude the trial court did not err in ruling that Thompson had failed to establish a taking and the city was entitled to judgment in its favor on this cause of action.

## B.

Thompson argues that the trial court erred in dismissing her due process cause of action. But again, Thompson has forfeited the argument for failure to present any authority beyond general due process principles or explain how such authority supports her position. (Rule 8.204(a)(1)(B); *Hodjat*, *supra*, 211 Cal.App.4th at p. 10.)

Even if not forfeited, we are not persuaded that Thompson was entitled to a jury trial on her due process cause of action. "Issues adjudicated in earlier phases of a bifurcated trial are binding in later phases of that trial and need not be relitigated." (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 487.) " '[D]uplication of effort is the very opposite of the purpose of bifurcated trials.' " (*Ibid.*, quoting *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 888.) This is true for issues litigated and decided by bench trial before remaining claims are put to a jury. (*Arntz*, at pp. 487–488; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1244 [findings at trial on earlier issues can implicate legal claims and do not improperly deny right to jury trial].)

Thompson alleged due process violations by the city that arose after she had obtained her building permit: (1) revoking her original permit; (2) coercing her into canceling her permit; (3) stopping work on the project; and (4) failing to tell her that

9

she could submit an appraisal when the city was determining whether her project was a substantial improvement.

But in its statement of decision on the takings cause of action, the trial court found that Thompson obtained this permit by misrepresenting the cost of construction. This finding was based on the $478,330 contract, evidence that Thompson had paid the $9,000 initial deposit consistent with the payment schedule in the contract, and expert testimony on the estimated cost of the project. Thompson disputes the extent of her knowledge but has not shown the evidence compels a contrary finding on the misrepresentation itself as a matter of law. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.)

The trial court also adjudicated other issues particular to each of the four due process violations alleged by Thompson. The court previously found: (1) Thompson cancelled her permit (and thus it could not have been already revoked); (2) the building department employee testified credibly that she discussed the course of action with Thompson, Thompson cancelled her permit, and Thompson understood she had cancelled her permit; (3) the building inspector stopped work after this cancellation because there was no longer any valid permit; and (4) any challenge to the city's substantial improvement determination was barred. Again, Thompson has not shown the evidence compels any contrary findings as a matter of law. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.) Nor has she presented any legal support for entitlement to a jury trial despite these findings.

We conclude the trial court did not err in dismissing Thompson's due process cause of action.

## C.

Thompson argues that the trial court erred in declining to issue the writ relief she requested: that the city review her

10

second set of plans and omit the setback requirement under section 9-9.205.

Code of Civil Procedure section 1085, subdivision (a) provides, in relevant part, that a writ of mandate may be issued "to compel the performance of an act which the law specially enjoins." Thompson argues that the trial court had no discretion under this provision to decline writ relief, given its conclusion that the city could not require her to comply with the setback requirement.

But the trial court also concluded that the requested relief was moot. It is a well-settled rule that " ' "[m]andamus will not lie to compel the performance of any act which would be void, illegal or contrary to public policy." ' " (*Torres v. City of Montebello* (2015) 234 Cal.App.4th 382, 403.) "Because mandamus must operate in the present, an intervening change in law may moot or otherwise make such relief unavailable." (*Ibid.*)

After this action was filed, section 9-9.205 was amended and now contains an exception to the setback requirement that applies to Thompson. (Walnut Creek Ord. No. 2170, eff. May 18, 2017.) It reads: "This section shall not apply to the issuance of a permit or to the grant of a variance for existing single-family homes that are not otherwise part of a new subdivision." (§ 9-9.205, subd. (b).) Thompson questions why the city did not raise the issue in its demurrer on the setback, but the amendment became effective two months after the demurrer was heard. (*Ibid.*)

We conclude the trial court did not err in declining to issue the requested writ relief as moot.

## DISPOSITION

The judgment is affirmed. The city is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

11

                                                                BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.

*Thompson v. City of Walnut Creek (*A168185, A168978*)*